# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Windsor Craft Sales, LLC, and
Crosby Yacht Yard, Inc.,

       Plaintiffs,

v.

VICEM Yat Sanayi ve Ticaret AS
and Vicem Yachts, Inc.,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-297 ADM/JJG

___

Geoffrey P. Jarpe, Esq., and Aimée D. Dayhoff, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Michael F. Cockson, Esq., Kerry L. Bundy, Esq., and Christopher J.L. Diedrich, Esq., Faegre & Benson LLP, Minneapolis, MN; R. Thomas Farrar, Esq., and Umberto C. Bonavita, Esq., Robert Allen Law, Miami, FL, on behalf of Defendants.

___

## I. INTRODUCTION

On August 18, 2010, the undersigned United States District Judge heard oral argument on Defendants VICEM Yat Sanayi ve Ticaret AS ("Vicem") and Vicem Yachts, Inc.'s ("Vicem US") (collectively "Defendants") Motion to Dismiss [Docket No. 35]. For the reasons set forth below, Defendants' Motion is denied.

## II. BACKGROUND[1]

Vicem, a Turkish corporation with its principal place of business in Istanbul, Turkey, manufactures and sells luxury wooden yachts. Am. Compl. [Docket No. 29] ¶ 3. Vicem US, a Vicem subsidiary with its principal place of business in Florida, sells yachts manufactured by

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Vicem.  Id. ¶ 4.  Windsor Craft Sales, LLC ("Windsor Sales") and Crosby Sales, LLC ("Crosby") (collectively "Plaintiffs") are retail boat dealers based in Minnesota and Massachusetts, respectively.  Id. ¶¶ 1, 2.

In April, 2007, Defendants entered into a Distribution Agreement (the "Vicem Agreement") with Windsor Craft Yachts, LLC ("Windsor Yachts") whereby Defendants agreed to manufacture yachts for Windsor Yachts' purchase and exclusive distribution.  Id. ¶¶ 7, 8.  Pursuant to the Vicem Agreement, Windsor Yachts purchased 31 yachts from Defendants.  Id. ¶ 14.  The Vicem Agreement included a breach of warranty provision which provides in relevant part:

> 12) <u>Product Warranty</u>: [Vicem] will furnish through [Windsor Yachts] to the first use purchaser of a Product its standard written limited warranty in effect at the time of delivery of Products to [Windsor Yachts].  The warranty will be issued in the name of [Windsor Yachts], however, all work, costs, expenses, reimbursements, and legal fees related to or incurred in connection with any warranty work, or any alleged breach of warranty claims, will be the sole and complete responsibility of [Vicem]. . . .

Cockson Decl. [Docket No. 38], Ex. A ¶ 12.

In July, 2008, Windsor Sales entered into a Distribution Agreement (the "Windsor Agreement") with Windsor Yachts whereby Windsor Sales became an authorized distributor of Windsor Yachts' products.  Am. Compl. ¶ 15.  Pursuant to the Windsor Agreement, Windsor Sales purchased 27 yachts from Windsor Yachts.  Id. ¶¶ 17-22.  The warranty included in the Vicem Agreement was incorporated into the Windsor Agreement and provided: "[Windsor Yachts] will furnish through [Windsor Sales] to the first-use purchaser of a Product [Vicem's] standard written limited warranty in effect at the time of delivery of Products to [Windsor Sales]

2

. . . ." Cockson Decl., Ex. E ¶ 11(b).

Windsor Yachts also entered into a dealer agreement with Crosby. Am. Complaint ¶ 26. Crosby purchased one yacht manufactured by Defendants. Id. ¶ 27.

Within one year of purchasing the yachts, Windsor Yachts began receiving complaints from its customers, including Crosby. Id. ¶ 29. After inspecting the yachts, Windsor Sales discovered manufacturing and workmanship defects and alleges that these defects resulted in sun damage and deterioration of the wood. Id. ¶¶ 30-39. Windsor Sales notified Defendants of the defects and inquired about repairing or replacing the yachts. Id. ¶ 42. Plaintiffs allege that Defendants made repeated promises to address the defects, but Defendants never did so. Id. ¶ 43. The Defendants' failure to take corrective action resulted in Windsor Sales sending Defendants a written revocation of acceptance in January, 2010. Id. ¶¶ 43-44. Defendants refused to accept Windsor Sales' written revocation of acceptance. Id. ¶ 45. On February 1, 2010, Plaintiffs filed suit for breach of express warranty, breach of implied warranty, and rescission.

### III. DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving

party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Breach of Warranty Claims**

Defendants argue that sections 3(a) and 15 of the Vicem Agreement prohibited Windsor Yachts from selling the yachts to resellers without Defendants' consent and thus the warranty protections do not extend to Plaintiffs. Section 3(a) provides, in pertinent part: "[Windsor Yachts] agrees to sell the Products only for use and not for resale." Cockson Decl., Ex. A. Section 15 provides: "[Windsor Yachts] shall have the right to assign or transfer this Agreement with the prior written consent of [Vicem] . . ." Id. Defendants argue that Windsor Yachts did not secure Defendants' consent before selling the yachts to Plaintiffs, and, therefore, Plaintiffs cannot recover from Defendants.

Plaintiffs counter that a letter agreement (the "Master Letter Agreement") between

4

Defendants and Windsor Yachts dated April 3, 2007 evinces Defendants' knowledge of and assent to Windsor Yachts' intent to sell the yachts to resellers, including Plaintiffs. The relevant portion of the Master Letter Agreement states: "[Vicem] agrees to manufacture certain makes of wooden watercraft to [Windsor Yachts'] specifications, which watercraft will thereafter be purchased and resold exclusively by [Windsor Yachts], all upon the terms and subject to the conditions set forth in such Distribution Agreement."

Defendants respond that this provision merely confirms that Vicem will manufacture wooden yachts for Windsor Yachts for purchase and resale to end-use purchasers. Defendants strenuously maintain that nothing in the Master Letter Agreement permits Winsdsor Yachts to sell the yachts to dealers or distributors who will then sell the yachts to end-use purchasers.

Plaintiffs add that other portions of the Vicem Agreement demonstrate that Defendants and Windsor Yachts contemplated the use of dealers and distributors, including Plaintiffs, to sell the yachts. For example, Addendum C-1 to the Vicem Agreement, which sets forth the terms of the limited warranty coverage to end-use purchasers, makes specific references to "authorized [Windsor Yachts] dealer[s]." The Addendum provides, in pertinent part:

> 1. Limited Warranty Coverage
>
> [Windsor Yachts] warrants that structural parts, components of the hull, deck and superstructure of each Windsor Craft Yacht *purchased from an authorized [Windsor Yachts] dealer* (the "Yacht"), when properly used, will be free from defects in material and workmanship for a period of five (5) years from the date of delivery to the original retail owner (the "Owner"), subject to the exclusions discussed below. . . .
>
> . . .
>
> 3. Limited Warranty Exclusions

> [Windsor Yachts] does not provide any warranty coverage, nor have any liability or responsibility, for any defects, costs, expenses or damages relating to the following:
>
> . . .
>
> - a Yacht *purchased from any party other than an authorized [Windsor Yachts] dealer*;
>
> . . .
>
> 6. Transfer of Limited Warranty
>
> The unexpired portion of this limited warranty may be transferred to a second owner upon purchase of Yacht from *an authorized [Windsor Yachts] dealer.* . . .
>
> . . .
>
> 7. Other Important Information
>
> . . . ***Your [Windsor Yachts] dealer* is an independent business, and is not the agent of [Windsor Yachts]. *Your [Windsor Yachts] dealer* may not modify or change the terms of this Limited Warranty, and any questions concerning the scope of this limited warranty coverage should be addressed directly to [Windsor Yachts].**

Cockson Decl., Ex. A, Addendum C-1-C-3 (emphasis in italics added).

In addition, Plaintiffs state that it is a common practice in the marine industry for distributors such as Windsor Yachts to sell their products to dealers for ultimate resale to end-use purchasers. Thus, Plaintiffs argue, Defendants understood and expected Plaintiffs' involvement in the sale of the yachts. Windsor Sales argues that it is entitled to conduct discovery into whether Defendants actually knew of and failed to object to Plaintiffs' status in the distribution chain.

When considering a motion to dismiss, a court must draw all reasonable inferences in the

plaintiff's favor, and must not dismiss the complaint unless no set of facts could be proven that would entitle the plaintiff to relief. The Vicem Agreement, its Addendums, and the Master Letter Agreement[2] are, at the very least, ambiguous as to whether Defendants consented to Windsor Yachts selling the yachts to authorized dealers, including Plaintiffs, who would then sell to end-use purchasers. Given that ambiguities concerning the sufficiency of the claims are construed in Plaintiffs' favor, the inescapable result for the purposes of this motion is that the agreements, read together, permit Windsor Yachts to sell the yachts to dealers and distributors for resale to the end-use purchaser.

### 1. Windsor Sales is in Privity With Defendants

Having reached this conclusion, the next issue is whether Plaintiffs can proceed against Defendants on their claims for breach of express warranty and breach of implied warranty. Defendants first argue that Florida law applies to Plaintiffs' breach of warranty claims. Under Florida law, privity is required to maintain a breach of warranty action. TWM & SM v. Am. Med. Sys., Inc., 886 F.Supp. 842, 844 (N.D. Fla. 1995). Because Plaintiffs lack privity with Defendants, the argument continues, the breach of warranty action cannot stand.

---

[2] The Vicem Agreement contains a merger clause that provides:

> Section 23) Entire Agreement: This Agreement, including the Addendums referred to herein, and the Master Letter Agreement between the parties, along with the attachments thereto, contain the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements and understandings, oral or written, and all prior custom and practice between the parties with respect to such matters.

Thus, consideration of all of these documents is appropriate.

At this juncture, the Court need not resolve what state's law applies to the breach of warranty claims. Under any of the state's laws proposed by Defendants,[3] these claims may proceed because Windsor Sales[4] is in privity with Defendants.

"While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." State v. Fritz, 527 A.2d 1157 (1987). Undoubtedly, as between Windsor Yachts and Defendants, there was a specific contract - the Vicem Agreement. As between these two parties, the potential for liability exists in negligent performance of the Vicem Agreement.

The contract between Windsor Yachts and Windsor Sales - the Windsor Agreement - called for Windsor Sales to sell the yachts manufactured by Defendants and incorporated the Vicem Agreement's limited warranty. Under the Windsor Agreement, Windsor Yachts subcontracted its duty to perform at least a portion of the Vicem Agreement to Windsor Sales. Contemplation of such a delegation is evinced in the Limited Warranty provision of the Vicem

---

[3] As mentioned, Defendants argue that Florida law applies. Alternatively, Defendants argue that New York, Massachusetts, Georgia, or Michigan's law should apply. New York, Massachusetts, and Georgia require privity between the parties on breach of warranty claims. Arthur Glick Leasing, Inc. v. William J. Petzold, Inc., 858 N.Y.S.2d 405, 408 (N.Y. App. Div. 2008); Grafton Partners, LLC v. Barry & Foley Motor Transp., Inc., No. 200400039A, 2007 WL 1418529, *2 (Mass. Super. 2007); Evershine Prods., Inc., v. Schmitt, 202 S.E.2d 228, 231 (Ga. App. 1973). Michigan does not appear to require privity. Greenfield Die & Mfg. Corp., v. John H. Powers, Inc., No. 213293, 2000 WL 33413347, *1 (Mich. App. 2000) citing Sullivan Indus., Inc. v. Double Seal Glass Co., Inc., 480 N.W.2d 623 (1991). Plaintiffs argue that Minnesota law governs this dispute. Under Minnesota law, privity is not a prerequisite for recovery in an action for breach of warranty under Minnesota law. Superwood Corp. v. Siempelkamp Corp., 311 N.W.2d 159, 161 n.5 (Minn. 1981).

[4] Crosby does not argue that it is in privity with Defendants. Instead, Crosby asserts that it is a third party beneficiary of the Vicem Agreement. This argument is addressed in the next section. See infra Section III.B.2.

Agreement which refers, multiple times, to "authorized [Windsor Yachts] dealer[s]." See Cockson Decl., Ex. A at ¶¶ 1, 3, 6, 7.[5]

As a subcontractor, Windsor Sales owed the same duty to Defendants as did Windsor Yachts - to conduct business with due care so as to properly sell and service Defendants' yachts. See Cockson Decl., Ex. E ¶ 3. Similarly, Defendants owed to Windsor Sales the same duty as to Windsor Yachts - to ensure the yachts were "manufactured in the highest quality," "free from all material defects," and "fit for their intended purpose."[6] Cockson Decl., Ex. A ¶ 8. Although Defendants argue that they did not consent to an assignment of these duties under the Vicem Agreement, as discussed above, the relevant agreements create an ambiguity on this issue that must be resolved in Plaintiffs' favor.

Further support for the conclusion that privity exists between Plaintiffs and Defendants is the existence of the indemnification clause in the Vicem Agreement. That clause provides:

> 20) <u>Indemnification</u>: [Vicem] shall indemnify and hold harmless [Windsor Yachts], its parent and subsidiary companies, and their respective officers, directors, employees, successors, subcontractors, licensees, assigns, and customers (collectively, the "Indemnified Parties") against and from, and promptly reimburse the Indemnified Parties, for any and all claims, losses, costs, damages, demands, actions, judgments, penalties, fines and liabilities of any kind (including attorneys' fees) (collectively, "Claims") arising out of: . . . (i) any defect or alleged defect in the products, (ii) [Vicem's] breach of any express or implied warranty
> . . .

<u>Id</u>. ¶ 20. As this provision makes clear, Windsor Sales, as a subcontractor, had rights under the

---

[5] The exact text of these provisions is set forth above. See supra Section III.B.

[6] As previously mentioned, the warranties in the Vicem Agreement were incorporated into the Windsor Agreement.

9

Vicem Agreement.

A legal relationship may arise out of privity of contract even though the parties are not the original parties to the contract. While "'strangers to a contract' have no rights under the contract," 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at 5 (4th ed. 2000), the parties to this lawsuit are not strangers to each other and legal rights and duties plausibly exist between them. The Court concludes that an adequate legal connection exists between Windsor Sales and Defendants to establish privity of contract. As a result, Windsor Sales has a protectable interest in the yachts and its breach of warranty claims may proceed.

**2. Crosby is a Third Party Beneficiary of the Vicem Agreement**

Having concluded that Windsor Sales is in privity with Defendants, the next issue is whether Crosby's claims for breach of warranty may proceed. Crosby argues that it is a third party beneficiary of the Vicem Agreement, and as such, can pursue its claim against Defendants. Because the determination of whether a party can establish third party beneficiary rights is similar under both Minnesota and Florida law, here again, a determination need not be made regarding the specific state law to apply to this claim. Greenacre Props., Inc. v. Rao, 933 So.2d 19, 23 (Fla. 2d DCA 2006) (explaining that to enforce rights under a contract, "[a] third party must establish that the contract either expressly creates rights for them as a third party or that the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member"); Julian Johnson Const. Corp. v. Parranto, 352 N.W.2d 808, 811 (Minn. Ct. App. 1984) (explaining that third party beneficiary rights can be established "by showing that the parties to the contract intended to benefit [the third party] at the time they

entered the contract").

For similar reasons as discussed above with respect to the determination that Windsor Sales is in privity with Defendants, the Court concludes that Crosby is an intended third party beneficiary of the Vicem Agreement. Foremost, the facts allow for the inference that the Vicem Agreement, its addendums, and the Master Letter Agreement contemplated the use of authorized Windsor Yachts' dealers, one of which is Crosby, and that the warranty and indemnity provisions included in those documents create rights and benefits for Crosby. Am. Compl. ¶ 26.

## C. Rescission Claim

Defendants argue that Plaintiffs' claim for rescission must be dismissed for the same reason as the breach of warranty claims: Plaintiffs are neither in privity with Defendants nor are they third party beneficiaries of the agreement. Those arguments have been considered and rejected.[7]

Defendants next argue that rescission is not an appropriate remedy because Plaintiffs have an adequate remedy at law. Both Minnesota and Florida law require a plaintiff to demonstrate an absence of a remedy at law to prevail on a rescission claim. Marso v. Mankato Clinic, Ltd., 153 N.W.2d 281, 290 (1967); Crown Ice Mach. Leasing Co., v. Sam Senter Farms, Inc., 174 So. 2d 614 (Fla. 2d DCA 1965). Plaintiffs allege that the yachts are not seaworthy and cannot be sold and, thus, they have no adequate remedy at law. Plaintiffs also aver that Defendants' failure to promptly repair or replace the products, despite Plaintiffs' repeated requests, entitles them to seek rescission to restore them to the position they were in prior to their purchase of the yachts. Based on these allegations, at this stage in the proceedings, Plaintiffs

---

[7] See supra Sections III.B.1 and III.B.2.

have sufficiently alleged a claim for rescission.  See Ponzo v. Affordable Homes of Rochester, LLC, No. A04-2234, 2005 WL 1804644, *6 (Minn. Ct. App. 2005) ("to be required to pursue a legal remedy, the legal remedy must be as practical, as efficient, and as complete as the equitable one"); see also Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1209 (M.D. Fla. 2002) (denying the defendant's motion to dismiss the plaintiff's rescission claim where the plaintiff pled the defects in the product as the reason for the lack of a legal remedy and where the defendant refused the plaintiff's repeated requests to remedy the defects).

**D. Waiver**

Defendants' final argument is that the Windsor Agreement required Windsor Sales "to make all claims for shortages, damaged or unacceptable Products in writing within seven (7) days after receipt of shipment.  Failure of [Windsor Sales] to make said notification shall constitute a waiver of any such claim."  Cockson Decl., Ex. E ¶ 9(a).  Plaintiffs respond, however, that the manufacturing and workmanship defects did not become apparent until months after Plaintiffs purchased the yachts.  Thus, Plaintiffs could not have waived their right to seek a remedy for such latent defects.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 35] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  October 13, 2010.