# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Windsor Craft Sales, LLC, and Crosby Yacht
Yard Inc.,

        Plaintiffs,

   v.

VICEM Yat Sanayi ve Ticaret AS, and Vicem
Yachts, Inc.,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-297 ADM/JJG

_____

Geoffrey P. Jarpe, Esq., and Aimee D. Dayhoff, Esq., Winthrop & Weinstine, PA, Minneapolis,
MN, on behalf of Plaintiffs Windsor Craft Sales, LLC, and Crosby Yacht Yard Inc.

Kerry L. Bundy, Esq., Christopher J.L. Diedrich, Esq., Matthew B. Kilby, Esq., Michael F.
Cockson, Esq., and Jeffrey P. Justman, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on
behalf of Defendants VICEM Yat Sanayi ve Ticaret AS and Vicem Yachts, Inc.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Plaintiffs Windsor Craft Sales, LLC ("Windsor Sales") and Crosby Yacht Yard Inc.'s

("Crosby") Motion to Amend Judgment for Award of Attorneys' Fees, Costs, Disbursements

and Prejudgment Interest [Docket No. 211] ("Motion to Amend"), as well as Defendants

VICEM Yat Sanayi ve Ticaret AS and Vicem Yachts, Inc.'s (collectively "Vicem") Rule 50(b)

Renewed Motion for Judgment as a Matter of Law and in the Alternative Rule 59 Motion for a

New Trial [Docket No. 216] ("Motion for JML").  For the reasons set forth below, Plaintiffs'

motion is granted in part and denied in part, and Defendants' motion is denied.

## II.  BACKGROUND

Plaintiffs' Complaint [Docket No. 1] was filed on February 1, 2010.  This Court denied

Defendants' Motion to Dismiss in its October 13, 2010 Order [Docket No. 53], and it denied in

part Plaintiffs' Motion for Summary Judgment [Docket No. 96] in its February 28, 2012 Order [Docket No. 112].  Claims of breach of express warranty and revocation of acceptance remained for trial.

The trial commenced on May 7, 2012, and concluded with a verdict on May 17, 2012. The trial had an international flavor — the jury heard testimony from seventeen witnesses, three of whom came from Turkey and required a Turkish interpreter.  Ninety-five exhibits were admitted for jury consideration.  The jury found for Plaintiffs on the revocation claim, awarding damages totaling $9,997,607.19.  <u>See</u> Special Verdict Form [Docket No. 205]. Judgment was entered on May 21, 2012.  Judgment [Docket No. 207].  Plaintiff filed its Motion to Amend on June 15, 2012, and Defendants filed their Motion for JML on June 18, 2012.

### III.  DISCUSSION

#### A.  Defendants' Motion for JML

In their motion, Defendants contend they are entitled to judgment as a matter of law pursuant to Rule 50(b) because the remedy the jury awarded was barred by the Uniform Commercial Code ("UCC") and because the Court erred in failing to enforce certain contractual limitations on remedies.  Defendants also argue that, even if the Court were to dismiss its motion for judgment as a matter of law, the Court should reduce the damages verdict or grant a new trial due to errors in evidentiary rulings and jury instructions.  These arguments are analyzed in turn below.

##### 1. Judgment as a Matter of Law

Rule 50(b) of the Federal Rules of Civil Procedure governs renewed motions for

judgment as a matter of law.  Under Rule 50, the court may allow judgment on the verdict,

order a new trial, or direct the entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1–3).

The standard of review for granting a Rule 50(b) motion is whether sufficient evidence exists

to support the jury verdict.  A motion for judgment as a matter of law should only be granted

when "all the evidence points one way and is susceptible of no reasonable inferences

sustaining the position of the nonmoving party."  Washburn v. Kan. City Life Ins. Co., 831

F.2d 1404, 1407 (8th Cir. 1987) (citation omitted).  In deciding a motion for judgment as a

matter of law, the court must view the evidence in the light most favorable to the party who

prevailed before the jury, making all reasonable inferences in that party's favor.  Id. (citation

omitted).  It is not the place of the court to substitute its own judgment for that of the trier of

fact.  Ryther v. KARE 11, 864 F. Supp. 1510, 1519 (D. Minn. 1994) (citing Nelson v.

Boatmen's Bancshares, Inc., 26 F.3d 796, 803 (8th Cir. 1994)).

### a.  UCC & Privity

As a preliminary matter, Defendants renew their arguments that Florida law, not

Minnesota law, should apply to this contractual dispute, and that Defendants and Plaintiffs are

not in contractual privity.  This Court has previously determined that Plaintiffs and Defendants

are in privity and that Minnesota law applies.  See Oct. 13, 2010 Order 10 ("The Court

concludes that an adequate legal connection exists between Windsor Sales and Defendants to

establish privity of contract."); Feb. 28, 2012 Order 7 ("[] Minnesota law applies . . . [and]

privity has been established here.").  Additionally, the evidence presented at trial supported the

Court's prior finding of contractual privity.  Minnesota law is the applicable law in this dispute

because the Vicem Agreement expressly states that Minnesota law governs, and because

Minnesota law — the law of the forum state — honors such agreements.  Feb. 28, 2012 Order

7–8; see generally Cockson Decl. [Docket No. 38] Ex. A ("Vicem Agreement").  The finding

of privity is premised on the Vicem Agreement's express contemplation that Windsor Craft

Yachts, LLC ("Windsor Yachts")  would delegate to subcontractors such as Windsor Sales and

that the contract would benefit third parties such as Crosby.  Id.; see also Peterson v.

Parviainen, 219 N.W. 180, 183 (Minn. 1928) (Stone, J., concurring) ("Privity of contract arises

from the agreement which vests certain rights and imposes obligations from which privity

results.  So, with respect either to a party or a beneficiary, the first thing to determine is what

rights he has under the contract, and, the presence of right being determined, privity

necessarily follows.").  Therefore, this Court reaffirms its prior rulings on privity and

applicable law, and finds no error either in the state law applied or the finding of privity

between the parties.

Defendants also argue that, although the UCC permits a buyer to revoke acceptance of

goods from a seller, it does not allow a buyer to revoke acceptance from a manufacturer.

Minnesota law permits revocation of a "commercial unit whose nonconformity substantially

impairs its value to the buyer" when the acceptance was based "on the reasonable assumption

that its nonconformity would be cured and its has not been seasonably cured," or "without

discovery of such nonconformity if the acceptance was reasonably induced either by the

difficulty of discovery before acceptance or by the seller's assurances."  Minn. Stat. §§ 336.2-

608(1)(a–b).  Moreover, Minnesota law permits a buyer to recover against a manufacturer.  See

Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349, 357–58 (Minn. 1977).  In Durfee, the

plaintiff purchased an automobile from a distributor through a local dealer, and the court found

4

that even where the purchaser had "no direct contractual relationship" with the distributor, "the buyer [was] entitled to look to the warrantor for relief." Id. at 357.  The Durfee court concluded that "[t]he lack of privity between the parties does not relieve [the distributor] of liability." Id. at 358.  The factual context of this case is even more clear than Durfee, because here the two parties are in contractual privity.  As previously ruled, Plaintiffs bought goods from Vicem and were therefore entitled to revoke acceptance when those nonconforming goods substantially impaired the value to them.

### b.  Contractual Limitations on Remedies

Defendants reiterate in their motion that the remedies available to Windsor Sales are contractually limited.  Defendants highlight that the Windsor Agreement between Windsor Yachts and Windsor Sales states in pertinent part that "In the event [Windsor Sales] rejects, repudiates or revokes acceptance of any of the Products, in whole or in part, [Windsor Yachts] shall have the right to have the Products repaired or replaced at its election."  Bundy Decl. [Docket No. 106] Ex. 10 ("Windsor Agreement") ¶ 11(a).  Defendants also state that the limited warranty contained in Addendum C to the Vicem Agreement applies to Plaintiffs, providing that the "sole and exclusive remedy under this warranty . . . is the repair or replacement . . . of defects in materials or workmanship covered by this limited warranty, and does not include" damages specifically disclaimed and excluded from this warranty.  Cockson Decl. Ex. A. Addendum C ("Limited Warranty") ¶ 5.

Addendum C does not constrain Plaintiffs' right to recovery, however, because it was solely intended as a limitation on the first use purchaser's right to recovery.  The Limited Warranty was to be furnished "through [Windsor Yachts] to the **first use purchaser**," Vicem

Agreement ¶ 12 (emphasis added), and it was valid for 5 years "from the date of delivery to the **original retail owner**," Addendum C ¶ 1 (emphasis added).  Further, the Vicem Agreement specifically noted that the limited warranty provision "shall not, and is not intended to, limit or decrease in any way the indemnification obligations set forth in Paragraph 20 of this Agreement."  Vicem Agreement ¶ 12.  Because Plaintiffs are neither first use purchasers nor retail owners, the Limited Warranty in Addendum C does not limit their remedy to repair or replacement.

Additionally, while non-party Windsor Yachts may have had "the right to have the [revoked] Products repaired or replaced at its election," Windsor Agreement ¶ 11(a), the Vicem Agreement expressly permits Plaintiffs to recover from Defendants.  See Vicem Agreement ¶ 20 ("[Vicem] shall indemnify and . . . promptly reimburse the Indemnified Parties for . . . property damage, or any other damages (including consequential damages, recall expenses, and lost profit) . . . [or] any defect or alleged defect in the Products . . . [or] [Vicem's] breach of any express or implied warranty.").   Because Plaintiffs are in privity with Defendants, Defendants are liable to them for the breach of an express warranty.

Defendants argue that Plaintiffs adopted prior inconsistent positions, and therefore they are bound by these "judicial admissions."  While admissions made in a pleading "are in the nature of judicial admissions binding upon the parties," Fox Sports Net N., L.L.C. v. Minn. Twins P'ship, 319 F.3d 329, 335 n.4 (8th Cir. 2003), Plaintiffs are not bound by the provisions of Addendum C simply because they mentioned its limited warranty in their Amended Complaint.  See Am. Compl. [Docket No. 29] ¶ 13.  The mere mention of a limited warranty in the Amended Complaint does not suggest that Plaintiffs intended to be bound by such a

warranty — in fact, the very text from Addendum C which is quoted in the Amended

Complaint confirms this.  <u>Id.</u> ("[S]tructual parts, components of the hull, . . . will be free from

defects in material and workmanship for a period of five (5) years from the date of delivery to

the original retail owner (the 'Owner').").  Plaintiffs never purported to be the original retail

owners, so the Addendum C language cannot be viewed as a binding factual admission

limiting their remedy.  Moreover, Plaintiffs have consistently sought damages for lost profits,

consequential damages, and rescission or revocation, damages which belie the argument that

Plaintiffs intended the Limited Warranty to apply to them.

### 2.  Reduction of Damages

Defendants also argue that Plaintiffs' jury verdict should be reduced by $575,306.19,

because the Crosby boat purchase price and related financing charges should not have been

considered by the jury.  Fundamentally, Defendants' request for a reduction in damages raises

practical concerns.  Because the jury did not itemize damages in its Verdict Form, this Court is

unable to determine with precision how the jury arrived the amount of $9,997,607.19.  The

Special Verdict Form merely asked the jury to answer "[w]hat amount of money will fairly and

adequately compensate Windsor for damages for Windsor's revocation claim?"  <u>Id.</u> No. 4.  To

have required an itemization of damages would have impossibly expanded the length of the

Special Verdict Form and would have required the jury to individually award damages for each

of the twenty-six yachts as well as to itemize damages for a complicated array of expenses

including financing fees, inspection costs, receipt and transportation expenses, costs for the

care and custody of the yachts once revoked, any reasonable charges or expenses connected

with minimizing loss, and any consequential damages.  In the final charge conference, neither

party objected to the cumulated damage question rather than itemization of damages in this

Special Verdict Form question.  The jury's answer, therefore, may or may not include the

amount by which Defendants seek to reduce the award.  Additionally, the jury did not award

Plaintiffs all the damages they sought, and it is unclear which items the jury reduced.  This

Court is unable to reduce the damages here without impermissibly speculating on the jury's

rationale.  See, e.g., Aquila, Inc. v. C.W. Mining, 545 F.3d 1258, 1265 (10th Cir. 2008) ("[The

district court] was simply unable to reduce Aquila's damages without resorting to

(impermissible) speculation . . . .").

Further, the particular damages Defendants seek to excise from the jury verdict are not

inappropriate damages.  Defendants contend that Crosby's yacht – Hull 25 – should not have

been included in the jury verdict, because Crosby sold the boat to Windsor Sales.  This

argument fails.  As Defendants aver, the UCC precludes a buyer from rejecting goods it has

accepted "with knowledge of a nonconformity," Minn. Stat. § 336.2-607, subd. 2, and

Minnesota law has long recognized this.  See Inland Prods. Corp. v. Donovan, Inc., 62 N.W.2d

211, 216 (Minn. 1954) (precluding rejection when a purchaser of farm cultivators accepted

modified versions from the seller).  Windsor Sales' purchase of the yacht from Crosby, both of

whom are named parties, does not preclude either party from seeking to reject or revoke

acceptance of the yachts from Defendants.  In fact, acceptance of Hull 25 had already been

revoked prior to the transfer of Hull 25 between Plaintiffs.  Compare Am. Compl. ¶ 44 (noting

that Plaintiffs revoked the acceptance of the yachts on January 6, 2010) with May 2, 2012

Letter [Docket No. 169] (stating that Crosby sold yacht back to Windsor Sales in January

2012).  Given Plaintiffs' privity with Defendants, this revocation was valid, and so simply

transferring the yacht between two co-plaintiffs in an ongoing lawsuit does not extinguish the rights of Plaintiffs to persist in their revocation claim against Defendants regarding Hull 25.

Additionally, Defendants aver that the jury inappropriately awarded $184,506.19, the amount Windsor Sales paid Crosby to cover financing costs associated with Hull 25.  Again, whether the jury actually awarded these costs within its damages award is impossible to discern, as the Special Verdict Form did not require the jury to specify the items of damages. More importantly, Minnesota law permits the recovery of financing costs which result from the seller's breach.  Jacobs v. Rosemount Dodge-Winnebago S., 310 N.W.2d 71, 77 (Minn. 1981) (permitting recovery of incidental damages such as loan payments, insurance, and licensing after seller's breach because buyer has a duty after rejection to hold the goods with reasonable care until returned to the seller).  Defendants cite Int'l Fin. Servs. v. Franz, 515 N.W.2d 379 (Minn. Ct. App. 1994) aff'd in relevant part by 534 N.W.2d 261, 270, for the proposition that financing costs not incurred incident to the breach are unrecoverable in a breach of warranty claim.  Franz, however, was concerned only with a breach of warranty claim where the sole remedy was the difference in value between the expected good and the received good.  In such a circumstance, the Franz court reasoned, financing costs would have been incurred regardless of whether the warranty was breached and so, as a result, the financing costs were not recoverable.  Franz, 515 N.W.2d at 387–88.  In this case, though, the financing costs were incurred at least partially as a result of the breach, and therefore are recoverable under Minnesota law.  Therefore, even if the jury did include an award of $184,506.19 as recovery of financing costs, these damages are recoverable and will not be reduced from Plaintiffs' verdict.

### 3.  New Trial

Defendants alternatively request that this Court grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Defendants contend they are entitled to a new trial first because the jury instructions and special verdict form inaccurately stated the law and second because the Court improperly excluded evidence of Windsor Yachts' bankruptcy.

The decision whether to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court. Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). "A new trial is required only when necessary to avoid a miscarriage of justice." Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1994) (citation omitted). "While the standard for granting a new trial is less stringent than for judgment as a matter of law, a new trial shall be granted only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence." Maxwell v. J. Baker, Inc., 160 F.R.D. 580, 581 (D. Minn. 1995). Similar to the standard for granting judgment as a matter of law, a court reviewing a motion for a new trial is "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972) (quoting Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 35 (1944)).

### a. Incorrect Jury Instructions[1]

Defendant argues that the jury instructions were clearly erroneous. A new trial may be ordered if the court erred in instructing the jury on the applicable law. T.H.S. Northstar

---

[1]The transcript has not yet been made available on CM/ECF, and the Court is unable to recollect which precise issues were preserved by objection. Therefore, the standard to apply to an error cannot be determined at this time.

Assocs. v. W.R. Grace & Co.-Conn., 860 F. Supp. 640, 650 (D. Minn. 1994), vacated on other grounds, 66 F.3d 173 (8th Cir. 1995).  A district court, however, has considerable discretion in framing instructions and "need not give every proposed instruction as long as the court adequately presents the law and the issues to the jury."  Fleming v. Harris, 39 F.3d 905, 907 (8th Cir. 1994).  Moreover, the instructions are to be considered "in their entirety [to] determine whether, when read as a whole, the charge fairly and adequately submits the issues to the jury."  Laubach v. Otis Elevator Co., 37 F.3d 427, 429 (8th Cir. 1994).  "A single erroneous instruction will not necessarily require reversal."  Id.

Defendants argue that the jury instructions on causation and the absence of an instruction regarding the contractual limitations on remedies were clearly erroneous.  The contractual limitations are included in Addendum C of the Limited Warranty.  See Addendum C ¶¶ 1–7.  As discussed in Part III(A)(1)(b), Addendum C is a limited warranty for first-use purchasers.  Neither of the Plaintiffs was an original retail owner, so the contractual limitations in Addendum C do not apply.  Therefore, for these reasons, the absence of a jury instruction on the contractual limitations included in Addendum C is not erroneous, and the jury instructions fairly and adequately presented the law to the jury.

Defendants argue that the jury instructions on revocation, as well as the Special Verdict Form question on that issue, were flawed.  Specifically, Defendants argue that the jury instructions did not require the jury to find causation in order to revoke acceptance.  As written, the Special Verdict Form question on revocation asks, "Did Windsor revoke acceptance before any substantial change in the yachts was caused by something other than the defects?"  Special Verdict Form No. 3.  The corresponding jury instruction, Jury Instruction

11

No. 23, states that revocation of acceptance must occur "before any substantial change in the condition of the yachts which is not caused by their own defects." Jury Instructions at 25. The Jury Instruction and the Special Verdict Form accurately stated the law of revocation in Minnesota. Indeed, the language of the Jury Instruction mirrors the text of the Minnesota statute on revocation, Minnesota Statute § 336.2-608. Accordingly, the Jury Instruction and Special Verdict Form question on revocation appropriately presented the law to the jury and therefore do not warrant a new trial.

Defendants also argue that the Court's jury instruction on causation was incorrect. Jury Instruction No. 28 provides in pertinent part: "The breach has to be the direct cause of the damage. A 'direct cause' is a cause that had a substantial part in bringing about the damage. The breach of warranty was a direct cause of damages if it was a substantial factor in the occurrence of the damage." Jury Instructions at 30. The last two sentences are drawn verbatim from the Minnesota Jury Instruction Guide. See Minn. Practice - Minn. Jury Instruction Guides (Civil), at CIVJIG 27.10 (5th ed. 2011); Minnesota Practice - Minn. Jury Instruction Guides (Civil), at CIVJIG 27.10 (4th ed. 1999). The first sentence comes directly from several Minnesota Supreme Court cases. See Franz, 534 N.W.2d at 266; Peterson v. Bendix Home Sys., Inc., 318 N.W.2d 50, 52–53 (Minn. 1982); Heil v. Std. Chem. Mfg. Co., 223 N.W.2d 37, 41–42 (Minn. 1974).

Defendants argue that the Heil court specifically rejected a nearly identical instruction for failing to include significant elements of proximate, or direct, causation. Contrary to Defendants' assertion, the Heil court required a new trial because "causation should at least have been mentioned . . . in its instructions to the jury" and the district court failed to include a

12

"more definite requirement of an affirmative finding under the special verdict that the breach of warranty proximately caused plaintiff's damages." Heil, 223 N.W.2d at 43.   Furthermore, the causation instruction the Heil court provided the jury was "that the defendant would not be liable for any losses which were not the direct result of any failure of the defendant's product, but rather were the result of some failure on the part of the plaintiff to use this care and diligence." Id. For these reasons, the Heil court concluded that the entire verdict may have been based upon speculation and therefore required a new trial. Id. The instructions and special verdict language in Heil stand in stark contrast to those provided the jury in this case. The jury instruction on causation and special verdict question on this issue fairly and adequately presented the law to the jury, and no new trial is warranted on this basis.

### b.  Evidentiary Exclusion

Defendants' contentions that evidentiary rulings require a new trial are unavailing. Trial courts have "broad discretion in determining the relevancy and admissibility of evidence." United States v. Watson, 650 F.3d 1084, 1089 (8th Cir. 2011) (citation omitted). These evidentiary rulings were decided throughout the course of the trial and the Court rests on its rulings and rationale as set forth in the court transcript.  In summary, the evidence relating to Windsor Yacht's and Genmar's bankruptcy proceedings which Defendants argue should have been admitted into evidence was excludable under Federal Rules of Evidence 401 and 403.  Evidence regarding these bankruptcy proceedings was not relevant, and any asserted probative value of such evidence was substantially outweighed by the prejudice and confusion its introduction would have caused the jury.  Significantly, neither Genmar nor Windsor Yachts was a party to this lawsuit.  Accordingly, the Court affirms its evidentiary ruling and

will not grant a new trial on this basis.

**B.  Plaintiffs' Motion to Amend**

Plaintiffs now move to amend the Judgment to include an award of attorneys' fees, costs, disbursements, and prejudgment interest, as well as to require Defendants to take possession and ownership of the twenty-six yachts which were the subject matter of the trial. These issues are analyzed below.

**1.  Attorneys' Fees and Costs**

Plaintiffs allege that the Vicem Agreement provides for their recovery of attorneys' fees. Defendants conversely argue that they are not in contractual privity with Plaintiffs, and therefore Plaintiffs cannot recover attorneys' fees under the Vicem Agreement.  In Minnesota, attorneys' fees are generally not recoverable in litigation unless a specific contract or statute permits their recovery.  Schwickert, Inc. v. Winnebago Seniors, Ltd., 680 N.W.2d 79, 87 (Minn. 2004); Barr/Nelson, Inc. v. Tonto's, Inc., 336 N.W.2d 46, 53 (Minn. 1983).

Plaintiffs do not rely on any statutory provision permitting recovery of attorneys' fees, but instead rely on the contractual language of the Vicem Agreement.  That agreement expressly states that the prevailing party is entitled to recover reasonable costs, expenses, and attorneys' fees "[i]n connection with any court action or arbitration brought pursuant to any claim arising out of or in connection with this Agreement or the relationship between the parties . . . ."  Vicem Agreement ¶ 26.  Defendants do not argue that Plaintiffs are not the prevailing party.  Because Plaintiffs and Defendants are in contractual privity, Plaintiffs are entitled to attorneys' fees as the prevailing party.

Even more specifically, the Vicem Agreement expressly states that Defendants

14

> shall indemnify and hold harmless the Distributor, its parent and subsidiary
> companies, and their respective officers, directors, employees, successors,
> subcontractors, licensees, assigns, and customers . . . for, any and all claims,
> losses, costs, damages, demands, actions, judgments, penalties, fines, and
> liabilities of any kind (including attorneys' fees) . . . arising out of . . . damage
> (including consequential damages, recall expenses, and lost profit), which may
> identifiably and proximately arise from or be identifiably and proximately
> connected with, in whole or in part ., . . the Manufacturer's breach of any express
> or implied warranty.

Vicem Agreement ¶ 20.  The indemnification provision also applies to damages arising out of

"Manufacturer's breach of the Agreement."  Id.  The provision continues, stating that the

"Manufacturer agrees to pay the Distributor for any and all expenditures made in connection

with such Claims, including without limitation in-house and outside legal counsel fees and

expenses . . . ."  Id.  This broad indemnification provision, therefore, explicitly envisions the

Manufacturer — Vicem — paying damages including attorneys' fees not only to the

Distributor, Windsor Yachts, but also to subcontractors or subsidiaries such as Plaintiffs.

Minnesota law has long honored such contractual agreements to pay attorneys' fees.  See, e.g.,

Griswold v. Taylor, 8 Minn. 342 (Gil. 301) (1863) (allowing the recovery of attorneys' fees as

provided under contract); Bolander v. Bolander, 703 N.W.2d 529, 555 (Minn. Ct. App. 2005)

(affirming district court's award of attorneys' fees pursuant to the parties' contractual

provision).  Plaintiffs are contractually entitled to reasonable attorneys' fees here.

Defendants persist in contending that the evidence presented at trial failed to establish

that Defendants were in contractual privity with Plaintiffs.  The evidence is to the contrary.

The testimony at trial established that Plaintiffs consistently communicated directly with

Defendants, that Windsor Sales purchased yachts directly from Defendants, that Plaintiffs

sought repairs directly from Defendants, and that Defendants and Plaintiffs were performing as

parties under the Vicem Agreement.  As stated by this Court's previous rulings, privity of contract has been established here.  <u>See</u> Section III(A)(1)(a).

Defendants, however, urge the Court to consider a case where a court found a lack of privity and as a result denied attorneys' fees.  Defendants cite <u>Frey v. Grumbine's RV</u>, Civ. No. 1:10-CV-1457, 2010 WL 4718750, at *7 & n.3 (M.D. Pa. Nov. 15, 2010), a case involving a retail purchaser attempting to sue, among others, the manufacturer of a recreational vehicle. The Pennsylvania court determined that the end user was not in contractual privity with the manufacturer, and on that basis denied attorneys' fees.  <u>Id.</u>  Here, however, Plaintiffs were specifically included in the Vicem Agreement, the Limited Warranty designed for the end user did not apply to them, and the attorneys' fee provision in the Vicem Agreement contractually entitles them to attorneys' fees.  Therefore, this case is distinguishable from <u>Frey</u> and requires a different outcome.

Defendants also argue that reading the attorneys' fee provision broadly would lead to absurd results and unlimited liability.  Although Defendants raise the specter of unending litigation brought by unnamed and unknown plaintiffs, Defendants' purported fears are not supported by the plain language of the contract.  While the attorneys' fee provision is very broad, it expressly lists the parties which could potentially launch a suit:   "[S]ubsidiary companies, and their respective officers, directors, employees, successors, subcontractors, licensees, assigns, and customers."  Vicem Agreement ¶ 20.  While a "contract must not be construed so as to lead to a harsh and absurd result," <u>Alliant Energy, Inc. v. Neb. Pub. Power Dist.</u>, No. 00-2139, 2001 WL 1640132, at *3 (D. Minn. Oct. 18, 2001), the plain reading of this unambiguous language specifically limits the parties which may recover attorneys' fees.

### a. Reasonableness of Attorneys' Fees

A court has substantial discretion in determining the reasonableness of attorneys' fees. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1084–85 (8th Cir. 2000). The amount of reasonable attorneys' fees must be determined based on the facts of each case. Hensley, 461 U.S. at 429; Milner v. Farmers Ins. Exch., 748 N.W.2d 608, 620–21 (Minn. 2008) (stating that Minnesota law determines the reasonableness of attorneys' fees according to the Hensley lodestar approach). The initial inquiry for determining the amount of a reasonable fee is to identify the "lodestar," the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. Hensley, 461 U.S. at 433. The "most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." Jenkins by Jenkins v. Missouri, 127 F.3d 709, 716 (8th Cir. 1997); see also Westendorp v. Indep. Sch. Dist. No. 273, 131 F. Supp. 2d 1121, 1125 (D. Minn. 2000) (same). Other factors courts consider in determining reasonableness of fees include:

> (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

Westendorp, 131 F. Supp. 2d at 1125 (citing Zoll v. E. Allamakee Cmty. Sch. Dist., 588 F.2d 246, 252 n.11 (8th Cir. 1978)).

Plaintiffs calculate the lodestar amount at approximately $1,399,000 in attorneys' fees for 4,391 hours spent litigating the contractual claim, and they seek over $471,000 in necessary

costs and disbursements.  This was complex litigation involving international businesses, sophisticated clients, and zealous attorney advocacy on both sides.  In the two-and-a-half years since the initial filing of the Complaint in February 2010, Plaintiffs successfully defended against a motion to dismiss, extensively argued a summary judgment motion, and engaged in numerous protracted discovery disputes.

Having reviewed the records submitted in support of Plaintiffs' attorneys' fee request, the Court finds that the number of hours claimed is excessive.  Foremost, although Plaintiffs succeeded on their preferred remedy of revocation, it was not an unalloyed victory — the approximately $10 million they recovered was significantly less than the amount they sought to recover, $17.2 million at the time of trial.  See Pls.' Statement of the Case [Docket No. 121] 10.  Additionally, the hours billed for various stages of this litigation appear overstated.  For example, the approximately 400 hours Plaintiffs billed solely for their summary judgment motion — a motion which was ultimately denied — appear unreasonable, given the discrete nature of the defined contractual issues of this case.  See Jarpe Decl. [Docket No. 214] Ex. 5B.  Also, the more than 240 hours Plaintiffs billed in responding to Defendants' eight motions in limine, despite their success in opposing the majority of them, seem disproportionate to the relatively brief memoranda and oral arguments devoted to these motions.  Id.  Further, the approximately 350 hours billed for the trial is overstated, including at least twenty-eight hours simply "[w]ait[ing] for verdict at courthouse."  Id. at 59.  From the records provided, the number of hours reasonably spent on a case of this stature should have been 3,900, and the Court reduces Plaintiffs' billed hours commensurately.

The fees Plaintiffs request will also be reduced to reflect a reasonable hourly rate that is

in keeping with the prevailing market rate in the relevant legal community for similar services

provided by lawyers of comparable skill, experience, and reputation.  Blum v. Stenson, 465

U.S. 886, 895 n.11 (1984).  The relevant legal community for this determination is the forum in

which the case has been litigated.  Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir.

2002).  A court may rely on its own knowledge of the prevailing market rates in arriving at its

determination of a reasonable hourly rate.  Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir.

2005).  The rates charged by Plaintiffs' lawyers are in keeping with the reasonable hourly rates

in Minneapolis, see Jarpe Decl. ¶ 5 (ranging from hourly rates of $300 to $495 for partners and

from $215 to $285 for associates), but the allocation of two-thirds of the hours to law firm

shareholders rather than to less experienced attorneys has resulted in an unnecessarily high

attorneys' fees request.  This was complex litigation conducted by skilled attorneys from well-

respected firms, and neither party spared expense or shied away from motion practice,

discovery disputes, or voluminous briefing.  Had lower-paid associates billed even forty

percent of the hours on this case, though, the partners' share would have been reduced to about

a third of the total billables, with the paralegal accounting for the remainder.  The Court finds

such a division of labor reasonable and the resulting average hourly rate more in keeping with

the market rate.  The appropriate award under the prevailing local rate given the nature and

duration of the case, as well as the time and labor reasonably required, is $1,100,000, rather

than the nearly $1,400,000 sought by Plaintiffs.

### b.  Costs and Disbursements

In addressing the costs and disbursements, the Court has reviewed the invoices and

awards the costs and disbursements claimed by Plaintiffs, finding them reasonably incurred in

the litigation of this multi-national, cross-country, document-intensive case.  The majority of

these costs are for expert witnesses, travel, photocopies, legal research, depositions, and

transcripts, all reasonable costs charged to a client in a case of this caliber.

Defendants cite Fair Isaac Corp. v. Experian Info. Solutions Inc., 711 F. Supp. 2d 991

(D. Minn. 2010), for the proposition that this Court should not award costs and disbursements

"incurred in the ordinary cost of litigating the trial, such as the costs of preparing their expert

reports or paying for translation or court reporting service," Defs.' Mem. in Opp'n to Pls.'

Mot. to Amend [Docket No. 221] 8 n.4.  Fair Isaac was a much different situation.  In Fair

Isaac, this Court reduced electronic discovery and contract attorney fees expended for a

marginal legal theory accorded scant attention by any party and which was dismissed at the

summary judgment stage.  711 F. Supp. 2d. at 1009.  Here, the claims of revocation and breach

of warranty litigated by Plaintiffs both went to the jury, both received equal attention and

briefing, and it is not clear which costs, if any, would have been expended on one of the legal

theories to the exclusion of the other.  Therefore, because the Vicem Agreement clearly

provides that the prevailing party is entitled to "all costs and expenses," and because these

costs and disbursements are reasonable and connected to this matter, the Court awards

Plaintiffs the amount requested, $473,933.77.

**2.  Prejudgment Interest**

In Minnesota, prejudgment interest on liquidated or sum-certain claims can be awarded

from the date the claims first arose.  ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d

551, 556 (Minn. 1977) (citation omitted) ("[W]here a claim is unliquidated but is readily

ascertainable by computation or by reference to generally recognized objective standards of

measurement, interest should be allowed the same as for a liquidated claim.").  Where the

damages are not liquidated and not readily ascertainable, Minnesota law requires that

prejudgment "interest on pecuniary damages shall be computed . . . from the time of the

commencement of the action or a demand for arbitration, or the time of a written notice of

claim, whichever occurs first. . . ."  Minn. Stat. § 549.09, subd. 1(b); see also Simeone v. First

Bank Nat'l Ass'n, 73 F.3d 184, 191 (8th Cir. 1996) (quoting Lienhard v. State, 431 N.W.2d

861, 865 (Minn. 1988)) (stating that Minn. Stat. § 549.09 permits prejudgment interest

"irrespective of a defendant's ability to ascertain the amount of damages for which [it] might

be held liable").  The statute clearly dictates that the prevailing party "shall receive interest" on

any award, with few limited exceptions.  Minn. Stat. § 549.09, subd. 1(b).  When judgments

are over $50,000, the interest rate is ten percent each year until paid.  Minn. Stat. § 549.09,

subd. 1(c)(2).

Although Plaintiffs cite law regarding prejudgment interest on liquidated or sum-certain

claims, they apparently concede that the ultimate damages amount was not certain and that

therefore Minnesota Statute § 549.09 should apply.  The amount of damages was not readily

ascertainable in this case, the parties continuously disputed the calculation of damages, and

therefore prejudgment interest cannot be calculated prior to the commencement of the action.

See, e.g., Potter v. Hartzell Propeller, Inc., 189 N.W.2d 499, 504 (Minn. 1971) (holding

damages not readily ascertainable from date of loss because of the parties' dispute as to the

calculation of damages).  Under Minnesota Statute § 549.09, then, the interest on Plaintiffs'

damages will be computed from the time of the filing of the Complaint on February 21, 2010,

21

at the rate of ten percent each year until the judgment is paid, totaling $2,525,422.97 to date.[6]

Defendants argue that if Plaintiffs are awarded prejudgment interest under Minnesota Statute § 549.09, they should not be allowed to recover such interest on disallowed items such as financing fees.  Minnesota law does not allow prejudgment interest to be awarded on any "portion of any verdict, award, or report which is founded upon interest, or costs . . . ."  Minn. Stat. § 549.09, subd. 1(b)(5).  The jury verdict in this case, however, does not detail what damages the jury awarded.  Question No. 4 on the Special Verdict Form asked jurors to determine "What amount of money will fairly and adequately compensate Windsor for damages for Windsor's revocation claim?"  In determining the amount of compensation, the jurors were instructed that they could consider consequential and incidental damages in addition to the "purchase price paid for the yachts."  Jury Instructions at 28, 32–33. Accordingly, it is not possible to divine — as Defendants attempt to do — whether the jury included in its award financing costs and interest, which would not accrue prejudgment interest, or items such as transportation, care, and custody costs, which would.  Therefore, the exclusion is inapplicable here, and the prejudgment interest is calculated on the entire jury award from the commencement of the action.

### 3.  Require Revocation

[6]

| YEAR | AMOUNT | RATE | DAYS | TOTAL |
|------|--------|------|------|-------|
| 2010 | $9, 997,607.19 | 10% | 314 | $860,068.13 |
| 2011 | $9, 997,607.19 | 10% | 365 | $999,760.72 |
| 2012 | $9, 997,607.19 | 10% | 243 | $665,594.12 |
| | | | GRAND TOTAL = | $2,525,422.97 |

Finally, Plaintiffs request this Court to require Defendants to take possession and ownership over the twenty-six yachts of which the jury found Plaintiffs had successfully revoked acceptance.  Defendants do "not object to amending the judgment to reflect that Vicem will take possession and ownership" of the yachts "at the time they pay the amount of the judgment."  Defs.' Mem. in Opp'n to Pls.' Mot. to Amend 11.  Therefore, this Court orders that the Judgment be amended to require Defendants to take possession and ownership of the twenty-six yachts at the time the Judgment is paid.

## IV.  ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants VICEM Yat Sanayi ve Ticaret AS and Vicem Yachts, Inc.'s Rule 50(b) Renewed Motion for Judgment as a Matter of Law and in the Alternative Rule 59 Motion for a New Trial [Docket No. 216] is **DENIED**; and

2.     Plaintiffs Windsor Craft Sales, LLC, and Crosby Yacht Yard Inc.'s Motion to Amend Judgment for Award of Attorneys' Fees, Costs, Disbursements and Prejudgment Interest [Docket No. 211] is **DENIED** in part and **GRANTED** in part.

3.     Defendants VICEM Yat Sanayi ve Ticaret AS and Vicem Yachts, Inc.'s are **ORDERED** to pay Plaintiffs Windsor Craft Sales, LLC, and Crosby Yacht Yard Inc. as follows:

a.     Costs and disbursements in the amount of $473,933.77.

b.      Attorneys' fees in the amount of $1,100,000.00.

4.      Defendants VICEM Yat Sanayi ve Ticaret AS and Vicem Yachts, Inc.'s

are **ORDERED** to pay prejudgment interest in the amount of

$2,525,422.97 to date.

5.      Defendants are **ORDERED** to take possession and ownership of the

yachts at issue at the time the Judgment is paid.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery

_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 30, 2012